# 2006 DTA 105

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE CAGUAS**
**PANEL XI**

RAÚL GUADALUPE VIERA
Apelante

v.

ÁNGEL ALBERTO DONES CINTRÓN, NILSA MARTÍNEZ DELGADO
Apelados

Núm. KLAN-06-00522

San Juan, Puerto Rico, a 14 de agosto de 2006

Panel integrado por su Presidenta, la Juez Pesante Martínez,
la Juez Feliciano Acevedo y el Juez Escribano Medina

Pesante Martínez, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Ante nos, nuevamente acude el apelante, Raúl Guadalupe Viera, quien procura por segunda ocasión la modificación de una sentencia *"enmendada nunc pro tunc"*, según denominada y emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI). Conforme el mandato dictado por este Tribunal mediante nuestra Sentencia de 28 de febrero de 2006, ██ el TPI modificó la parte dispositiva de su *"sentencia"* ██ de 25 de mayo de 2005. Así, el foro de instancia cumplió en cuantificar la suma concedida por concepto de honorarios de abogado, particularizar la cifra otorgada por razón de daños, especificar el concepto en que los mismos fueron concedidos y sustituir la parte de su dictamen anteriormente revisado que disponía que una partida cierta de $674 mensuales habría de ser satisfecha hasta la fecha del pago de la sentencia.

Confirmamos la sentencia apelada.

## II

De entrada, huelga necesario puntualizar que mediante la decisión aquí apelada, el TPI cumplió con nuestro mandato, a saber, completar el ejercicio de precisar las áreas grises subyacentes a la parte dispositiva de su previa resolución, según particularizadas por este Foro. Ello abonó a que la sentencia que nos ocupa adquiriese finalidad, cuya consecuencia fue impartirle ejecutabilidad a la misma. Reproducimos, en su totalidad, el recuento fáctico conforme esbozado en nuestra sentencia de 28 de febrero de 2006 de suerte que podamos disponer del recurso ante nos.

Por corresponder a la prueba desfilada en juicio y por ser esencialmente correctas, adoptamos las determinaciones de hechos formuladas por el TPI, según transcribimos a continuación.

*1. El 18 de marzo de 1999, se otorgó la Escritura 60 ante el Notario Carlos Palmer Ramos, donde comparecieron las partes.*

*2. En la Sección Expositiva de la referida Escritura dice que el Vendedor (El Demandado) es dueño del predio de 1,025.91 m/c segregado de la finca principal y que el mismo ha sido aprobado por ARPE en el caso #95-46-A356-CPI condicionado a requerimiento de las facilidades de carretera, agua y luz.*

*3. En la Primera Cláusula se dice que el Demandante [debe entenderse como el demandado] Vende, Cede y Traspasa el solar por el precio de $31,000.00 cuya suma el Demandante entregó al Demandado en esa misma fecha.*

*4. En la Cláusula Tercera dice que la segregación depende de que ARPE apruebe la Petición presentada*

por Inter-American Investment Center Inc.

5. Dicha Escritura contiene numerosos espacios en blanco que no fueron inutilizados según requiere la Ley Notarial.

6. El Demandante declaró que no conocía al Notario y fue el Demandado quien lo contrató.

7. Además, el Demandante pagó la suma de $1,500 al Demandado para que rellenara el solar.

8. El Contrato de Compraventa otorgado entre las Partes el 08 de febrero 1999 disponía que el solar a venderse había sido sometido y aprobado por ARPE en el caso #95-46-A356 CPD, condicionado a requerimiento de las facilidades de carretera, agua y luz. Además, que tan pronto se construyeran las facilidades, se solicitaría la aprobación final para poder presentar Escrituras de Compraventa.

9. Haciendo referencia a unos planos de Certificación del Registro de la Propiedad y una carta de ARPE fechada 18 de marzo de 2005, el Demandando declaró que se aprobó la enmienda al desarrollo preliminar alterno (Permiso de Actividad Incidental), Núm.: 99DX2-00001-02675/02DL2-CET00=0239 y 95-46-A-414-CDP.

10. Ninguno de los Exhibits presentados o los documentos mencionados en el párrafo anterior, tienen que ver con la Petición o Aprobación de la Segregación del solar objeto de controversia.

11. Luego de requerirle en un sinnúmero de ocasiones la segregación, el Demandante optó por solicitar la devolución del pago realizado de $33,000.00. El 01 de mayo de 2001, suscribieron documento a manuscrito donde el Demandante "cedía" el solar al Demandado que le devolvería su dinero en noventa (90) días.

12. Mientras declaraba ofreció al Tribunal el Plano Certificado y aprobado por ARPE para la segregación del solar objeto de controversia sometido el 29 de septiembre de 2003 y aprobado el 13 de noviembre de 2003 bajo el número 03IU2-CET-00-05155 o sea más de cinco (5) años después de haber "vendido el solar" y recibido los $33,000.00. Declaró que conocía el proceso de desarrollo de proyectos porque se dedicaba a eso anteriormente.

13. El [Demandante] se vio obligado a comprar otro por la cantidad de $60,000.00 que tenía reservada para la construcción de su residencia en Bairoa. Tuvo que hipotecar el terreno para obtener el dinero para el financiamiento de su residencia. Tomó un préstamo de $104,000.00 y paga $674.00 mensuales.

14. El Demandado declaró que tiene un proyecto de veintitrés (23) solares, pero no tiene todavía permiso de segregación y no ha podido vender porque no tiene luz, agua o caminos. Aparentemente, el solar objeto de controversia ahora forma parte de este proyecto."

[Énfasis omitido.]

Además, conforme surge de la exposición estipulada de la prueba, el 29 de octubre de 1999, la partes pactaron nuevamente porque no podía obtenerse financiamiento por la falta de los permisos de segregación de ARPE y tampoco podía edificarse en el solar adquirido. Así, *"las partes pactaron que el demandando vendería el solar o derechos del mismo, y se comprometía a pagar $35,000.00 en un término de noventa (90) días y si vendía en una cantidad mayor la ganancia obtenida sobre los $35,000.00 serían para el demandado. El acuerdo se resume en un documento redactado en manuscrito autorizando al demandado a disponer del inmueble o de los derechos del mismo"*. Véase Exposición Estipulada de Prueba, a la pág. 1. Al momento de presentar la demanda, es decir, cuatro años después de suscrito el contrato, el peticionario no había cumplido

con la devolución pactada.

A la luz del cuadro fáctico que precede, el 21 de octubre de 2004, los recurridos presentaron ante el TPI la demanda que nos ocupa sobre nulidad de escritura, incumplimiento de contrato, daños y perjuicios y cobro de dinero contra el aquí peticionario. Estos acotaron, en síntesis, que el señor Guadalupe Viera incumplió el aludido contrato al no brindar información sobre el tiempo que demoraría llevar a cabo las gestiones en ARPE para poder cumplir así con los términos del acuerdo. Adujeron que, a sabiendas que los permisos necesarios no iban a ser aprobados dentro de un término razonable, Guadalupe Viera indujo a error a Dones Cintrón y Martínez Delgado con el fin de obtener beneficios económicos de estos últimos sin cumplir con su parte del contrato. En consecuencia a dicho incumplimiento doloso, los recurridos se vieron forzados a incurrir en gastos de $60,000 por concepto de trámites de financiamiento para la compra de otro solar. Ello los obligó a hipotecar dicho terreno para financiar la nueva residencia por lo que tomaron un préstamo hipotecario de $104,000 con pagos mensuales de $674. Mediante su acción, Dones Cintrón y Martínez Delgado solicitaron la devolución de las cantidades entregadas al peticionario, más los intereses legales devengados y daños y angustias mentales por los alegados actos culposos, dolosos y negligentes.

Por su parte, Guadalupe Viera contestó la demanda, negó las alegaciones y afirmaron que no procedía la reclamación de nulidad de los contratos suscritos, ya que la condición para su plena eficacia dependía de ARPE y no de ellos.

Tras celebrar la vista en su fondo de 25 de mayo de 2005, el TPI emitió el dictamen hoy recurrido, el cual, para propósito de disponer de la controversia que hoy nos atañe, transcribimos su parte dispositiva a continuación:

*"[Por] todo lo anterior se condena al Demandado al pago de los $33,500.00 [más] los intereses legales al 6% desde el 18 de marzo de 1999, [más] el pago de hipoteca de $674.00 mensuales desde la fecha de constitución de la misma hasta la fecha de pago de esta Sentencia, todos los gastos de la constitución de la hipoteca, costas y honorarios de abogado por temeridad.*

*No desfiló prueba de las ganancias dejadas de percibir."*

[Énfasis en el original.]

El 20 de julio de 2005, Guadalupe Viera presentó ante el TPI una solicitud de reconsideración de dicha determinación, siendo declarada no ha lugar por el foro sentenciador el 16 de agosto de 2005.

Insatisfecho, el peticionario presentó ante nos un primer escrito de *"apelación"* señalando la comisión por parte del TPI de dos errores. El primer error versó en torno a la conclusión que Guadalupe Viera actuó dolosamente al momento de suscribir el pacto entre las partes; el segundo error recayó en la imposición del pago de intereses desde que los recurridos suscribieron la escritura de compraventa o surgió la causa de acción, la imposición del pago de los costos de constitución de dicha hipoteca y sus pagos mensuales hasta el pago de la sentencia, más el pago de honorarios de abogado.

Al cabo de varios trámites, optamos por desestimar el recurso por falta de jurisdicción. La determinación estuvo fundamentada en que Guadalupe Viera no incluyó en el apéndice documento que acreditase gestiones en el TPI encaminadas a lograr la interrupción del término jurisdiccional para acudir ante nos. Aclarado el asunto, declaramos con lugar la reconsideración presentada ante nos por Guadalupe Viera y le concedimos término a la parte recurrida para que presentara su alegato.

Tras algunos trámites procesales usuales en este tipo de caso, quedó perfeccionado el recurso y resolvimos

que el modo en que estaba redactada la parte dispositiva del dictamen hacía inejecutable el mismo. Al disponer el TPI que el pago de la mensualidad de $674 debía ser efectuado progresivamente hasta el pago de la totalidad de la sentencia y no surgir con claridad si el mismo era con relación al resarcimiento de los daños ocasionados, u otro concepto, ello daba dando paso a la especulación y por tanto debía clarificarse. De otra parte, en cuanto a los honorarios de abogado, también colegimos que, aunque no lo determinó expresamente, el TPI concluyó que la parte apelante fue temeraria. No obstante, incidió dicho foro al no imponer una cantidad cierta a ser satisfecha por este concepto. Por ello, la partida de honorarios de abogado por temeridad tampoco quedó finalmente adjudicada.

En virtud de ello, la resolución dictada por el TPI el 27 de mayo de 2006 no adquirió carácter final porque el tribunal se limitó a resolver parte de las controversias, separables de las restantes. Nuestro mandato se circunscribió en aquella instancia a instruir al foro de instancia para que emitiera un dictamen final que clara y específicamente dispusiera de todas las reclamaciones, así como la particularización de las partidas a concederse de forma que el mismo pudiese ejecutarse.

En atención a lo anterior, el foro de instancia emitió una *"Sentencia enmendada Nunc Pro Tunc"* ateniéndose a nuestro mandato, además de añadir dos determinaciones de hechos las cuales leen así:

*"2. La Parte Demandada incurrió en dolo, negligencia y morosidad (Ver primer párrafo de la página 5 de la Sentencia donde se concluye que el demandado incurrió en dolo).*

*3. Se determina que la Parte Demandada incurrió en temeridad, ya que a todas luces no procedía litigar este caso."*

Finalmente, el foro sentenciador dispuso de la controversia de la siguiente manera:

*"Por todo lo anterior, se condena al Demandado al pago de los $33,500 mas (sic) los intereses legales al 6% desde el 18 de marzo de 1999."* (Énfasis omitido.)

Además, a modo de precisar y aclarar su dictamen anterior en respuesta a nuestro llamado, el TPI sentenció que:

***"El demandado responde al deudor de todos los daños conocidos que se deriven del incumplimiento de una obligación cuando el obligado ha incurrido en dolo.*** *Según el Exhibit 7 estipulado, la venta de un solar similar esta (sic) valorado en $100.00 el metro. EL propio Demandado los anunció para la venta en el (sic) Nuevo Día. De haber podido el demandado comprar el solar, de 1,025.91 m/c, al día de hoy costaría aproximadamente $102,500.00 menos los $33,500.00 que debe devolver.* ***Los daños por la pérdida económica ascienden a $69,000.00.*** *Los honorarios de abogado por temeridad ascienden a la cantidad de $5,000.00. Someta memorando de costas en diez días. "* (Énfasis nuestro.)

Insatisfecho con dicha determinación, acude ante nos el apelante señalando la comisión por parte del TPI de 11 errores. En síntesis, su reclamo cuestionó la apreciación de la prueba efectuada por el foro de instancia para concluir que éste actuó dolosamente en el proceso de negociación y otorgamiento de la escritura de compraventa que comprende la transacción *bona fide* habida entre las partes. El apelante adujo que, contrario a lo estimado por el TPI, los intereses legales a ser pagados no se deben computar desde el 18 de marzo de 1999, fecha en que fue otorgada la referida escritura de compraventa. A su parecer, los mismos debieron ser computados desde la fecha de su alegado incumplimiento de la obligación de devolver el dinero a la parte apelada conforme el llamado *"contrato"* firmado entre las partes el 1 de mayo de 2001. Acorde con su criterio, el incumplimiento al que se refería la demanda instada en el presente caso no es sobre el cumplimiento específico de los términos y condiciones contenidos en la escritura de compraventa, sino reside sobre un

contrato de prenda nacido del mencionado *"contrato"*. Por tanto, el apelante insiste que el acuerdo vertido en la nombrada escritura de compraventa sufrió una novación, donde la obligación que surgió de ese nuevo contrato, por su parte, fue la entrega de un dinero – sin intereses y en un término cierto. Así, puntualiza el apelante que la fecha a considerar para el cómputo final debió ser aquella en la que se firmó el alegado *"contrato"* que supuestamente resolvía la compraventa. Finalmente, el apelante cuestionó las partidas concedidas por concepto de daños y la imposición de honorarios de abogado por temeridad.

Transcurrido el término para que la parte apelada presentara su alegato, con el beneficio de una exposición narrativa de la prueba y el análisis de la totalidad del expediente ante nos, resolvemos.

## III

En nuestra jurisdicción, los contratos tienen fuerza de ley entre las partes contrayentes, quienes vienen obligadas a observar sus términos. 31 L.P.R.A. sec. 2994.

La indemnización a que una parte contratante tiene derecho, a causa del incumplimiento de la obligación pactada por la otra parte contratante está regida, principalmente, por los Arts. 1054 al 1062 del Código Civil, 31 L.P.R.A. secs. 3018 a 3026.

Cuando el incumplimiento de una obligación contractual produjere daños a una de las partes contratantes, procede una acción de daños y perjuicios por incumplimiento contractual. *Soc. de Gananciales v. Vélez & Asoc.*, 145 D.P.R. 508 (1998). Ha señalado el Tribunal Supremo:

*"El Código Civil de Puerto Rico distingue entre los daños derivados del incumplimiento de un contrato, Art. 1054 (31 L.P.R.A. sec. 3018), y los derivados del incumplimiento de unas obligaciones y deberes impuestos por la naturaleza y por la ley, que son necesarios para la connivencia social, Art. 1802 del Código Civil, 31 L. P.R.A. sec. 5141."*

Las acciones *ex contractu* se basan en el quebrantamiento de un deber que surge de un contrato expreso o implícito y tienen por objeto que se cumplan las promesas sobre las cuales otorgaron su consentimiento...Si el daño surge exclusivamente como consecuencia del incumplimiento contractual, la acción de daños *ex contractu* sería el único remedio disponible.

Por ende, para que proceda esta acción tiene que haber existido un acuerdo de voluntades que genere una obligación, situación, o un estado de derecho producto de un convenio, que haya creado unas expectativas a base de las cuales actuaron las partes. De ordinario, cada parte confía en que la otra parte cumplirá con lo libremente pactado, conforme al principio de la obligatoriedad de los contratos y a la buena fe. Una acción u omisión voluntaria, por la cual resulte incumplida una obligación anteriormente constituida, da origen a la acción de daños y perjuicios contractuales.

*Id.*, a las págs. 521 y 522.

Por su parte, el Art. 1054 del Código Civil, 31 L.P.R.A. sec. 3018, establece que: *"[q]uedan sujetos a indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier modo contravinieren a tenor de aquellas".*

El Art. 1057 del mismo cuerpo legal, 31 L.P.R.A. sec. 3021, establece que: *"[l]a culpa o negligencia del deudor consiste en la omisión de aquella diligencia que exija la naturaleza de la obligación y corresponda a las circunstancias de las personas, tiempo y del lugar. Cuando la obligación no exprese la diligencia que ha de prestarse en su cumplimiento, se exigirá la que correspondería a un buen padre de familia."*

El Art. 1058, 31 L.P.R.A. sec. 3022, reza de la siguiente manera: *"[f]uera de los casos expresamente mencionados en la ley, y de los en que así lo declare la obligación, nadie responderá de aquellos sucesos que no hubieran podido preverse, o que previstos, fueran inevitables."* El Art. 1059, 31 L.P.R.A. sec. 3023, dispone que: *"[l]a indemnización de daños y perjuicios comprende, no sólo el valor de la pérdida que haya sufrido, sino también el de la ganancia que haya dejado de obtener el acreedor, salvo las disposiciones contenidas en los artículos siguientes. Los daños y perjuicios de que responde el deudor de buena fe son los previstos o que se hayan podido prever al momento de constituirse la obligación y que sean consecuencia necesaria de su falta de cumplimiento. En caso de dolo responderá el deudor de todos los que conocidamente se deriven de la falta de cumplimiento de la obligación"*. 31 L.P.R.A. sec. 3024.

Al analizar los Arts. 1059 y 1060, el Tribunal Supremo ha señalado:

*"El artículo 1059, según el cual la indemnización de daños y perjuicios comprende no sólo el valor de la pérdida que se haya sufrido, sino también el de la ganancia que se haya dejado de obtener, aparece condicionado por el Artículo 1060, que limita los daños y perjuicios, tratándose del deudor de buena fe, a los previstos o que se hayan podido prever al tiempo de constituirse la obligación y que sean consecuencia necesaria de la falta de cumplimiento de la misma. El último párrafo del Artículo 1060 establece una distinción importante, porque de acuerdo con el mismo, el deudor doloso no sólo responde de los daños previstos o que se hayan podido prever al momento de constituirse la obligación, sino de todos los que conocidamente se deriven de su falta de cumplimiento.*

*..."*.

Según estos orígenes y este Artículo [art. 1060 de C.C.P.R.], caben dos hipótesis: el caso del deudor de buena fe y el caso de dolo. En la primera de estas hipótesis se necesita que concurran en los perjuicios dos circunstancias, y no cualquiera de ellas, sino ambas conjuntamente; que tales perjuicios se pudieran prever al tiempo de constituirse la obligación, no después de constituida, y que sean consecuencia necesaria del incumplimiento de la obligación, no una mera contingencia, ni siquiera incidentalmente enlazados con aquel incumplimiento.

*González Mena v. Dannermiller Coffee Co.*, 48 D.P.R. 608, 614-615 (1935).

Resolvió dicho Foro que:

*"En el presente caso hay que descartar el elemento del dolo, que no aparece en las alegaciones de la demanda. No se alega que la conducta de la demandada sea dolosa, y como la buena fe se presume, si no existe alegación en contrario, no cabe presumir que se haya establecido ningún hecho destructivo de esta presunción. Descartado el dolo, los daños a que tiene derecho el demandante son aquellos previstos o que se hayan podido prever al tiempo de constituirse la obligación y que sean consecuencia necesaria de su falta de cumplimiento. No se alega en la demanda que hubiesen daños previstos y, por lo tanto, debemos atenernos a los que se pudieron prever cuando se llevó a cabo el contrato. Las angustias mentales sufridas por el demandante no son ciertamente daños que puedan ser indemnizados en esta acción basada en el incumplimiento de contrato. No lo son en nuestro derecho civil ni en el derecho americano, salvo raras excepciones en que el incumplimiento de contrato es de tal naturaleza que autoriza an "action in torts'."*

*González Mena v. Dannermiller Coffee Co., supra.*

Lo resuelto por el Tribunal Supremo en el antes citado caso ha sido luego reiterado en las opiniones de *Díaz v. Cancel*, 61 D.P.R. 888, 898 (1943); *Díaz v. Palmer*, 62 D.P.R. 111, 114 (1943); *Camacho v. Iglesia Católica*, 72 D.P.R. 353, 363(1951); *Soc. de Ganaciales v. Vélez & Asoc., supra.*

Ahora bien, al igual que en cualquier otro tipo de acción por daños, el demandante por incumplimiento de contrato tiene el peso de la prueba para establecer sus daños. *"... [N]o basta con que el actor demuestre el incumplimiento de la obligación por el deudor, sino que precisa además que pruebe la existencia real y positiva de los daños causados, pues de no ser así perdería la indemnización su natural carácter, adquiriendo el de sanción penal, concepto muy diferente al contenido en el Art. [1054 del Código Civil, 31 L.P.R.A., sec. 3018]; sin que el incumplimiento implique de por sí dicha existencia de perjuicios, al efecto de relevar de la prueba de los mismos por ser imprescindible la de los dos hechos, o sea, el incumplimiento y el daño"*. *Pérez v. Sampedro*, 86 D.P.R. 526, 530-531 (1962); véanse, además, *Colón v. Promo Motor Imports, Inc.*, 144 D.P.R. 659 (1997); *Neca Mortg. Corp. v. A & W Dev. S.E.*, 137 D.P.R. 860 (1995); *Riley v. Rodríguez Pacheco*, 119 D.P.R. 762, 804 (1987).

En cuanto al cómputo de la indemnización que ha de ser concedida, el Art. 1059 del Código Civil dispone lo siguiente:

*"La indemnización de daños y perjuicios comprende no sólo el valor de la pérdida que haya sufrido, sino también el de la ganancia que haya dejado de obtener el acreedor, salvo las disposiciones contenidas en las secciones siguientes."*

31 L.P.R.A. sec. 3023.

No obstante, el Art. 1060 del Código Civil limita la responsabilidad del deudor de buena fe a los *"daños y perjuicios...previstos o que se hayan podido prever al tiempo de constituirse la obligación y que sean consecuencia necesaria de su falta de cumplimiento"*. 31 L.P.R.A. sec. 3024. La cuantía de daños realmente sufridos debe probarse con razonable certeza y precisión, sin recurrir a especulaciones. *Saurí Rodríguez v. Colón Martínez*, 127 D.P.R. 900 (1991); *Torres Ortiz v. Plá*, 123 D.P.R. 637 (1989). Con ello se intenta evitar que se produzcan decisiones en el vacío, en el abstracto o bajo hipótesis de índole especulativa en lo medular. Por lo tanto, no se concederá un remedio monetario cuando la existencia del daño sea especulativa. *Odriozola v. Superior*, 116 D.P.R. 485 (1985); *Pereira v. International Basic Economy Corp.*, 95 D.P.R. 28 (1967).

Con relación a las angustias y los daños mentales, reiteradamente, el Tribunal Supremo ha resuelto que, de ordinario, cuando se trata de un incumplimiento contractual, no proceden a no ser que hubieran podido preverse al tiempo de constituirse la obligación y fueran consecuencia necesaria de la falta de cumplimiento del contrato. *Soc. de Gananciales v. Vélez & Asoc.*, *supra*; *Camacho v. Iglesia Católica*, *supra*.

En su consecuencia, cuando el incumplimiento de una obligación contractual produjere daños a una de las partes contratantes, procede una acción de daños y perjuicios por incumplimiento contractual. *Soc. de Ganaciales v. Vélez & Asoc.*, *supra*.

De otra parte, y a tenor con el error número once en cuanto al resultado concomitante de rendir una determinación sobre la existencia de actuación temeraria, contumaz y frívola por parte del perdidoso como para fijar los consabidos honorarios de abogado, nos expresamos.

La Regla 44.1 de Procedimiento Civil, *supra*, dispone lo siguiente:

*"Las costas le serán concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación, excepto en aquellos casos en que se dispusiera lo contrario por ley o por estas reglas. Las costas que podrá conceder el tribunal son los gastos incurridos necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que un litigante debe rembolsar a otro.*

...

*Honorarios de abogado. En caso de que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. "*

Se ha resuelto que *"[l]a imposición de honorarios de abogado es discrecional, pero la Regla 44.1(d) de Procedimiento Civil es clara en el sentido de que cuando una parte ha procedido con temeridad, el tribunal deberá imponerle en su sentencia el pago de una suma por concepto de honorarios de abogado. Determinada la existencia de temeridad, la condena de honorarios es imperativa. " Blas Toledo y otros v. Hospital Nuestra Señora de la Guadalupe,* 146 D.P.R. 267 (1998).

La imposición de honorarios de abogado por temeridad tiene el propósito de penalizar *"al litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente a asumir las molestias, gastos, trabajo e inconvenientes de un pleito ". Oficina de Etica Gubernamental v. Román González,* **2003 J.T.S. 74**, citando a *Domínguez Vargas v. Great American Life Assurance Company of Puerto Rico, Inc.,* **2002 JTS 110**.

Se ha dicho que la *"temeridad es una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia. También sujeta al litigante inocente a la ordalía del proceso judicial y lo expone a gastos innecesarios y a la contratación de servicios profesionales, incluyendo abogados, con el gravamen a veces exorbitante para su peculio. "* H. Sánchez, *Rebelde sin Costas,* 4(2) Boletín Judicial 14 (1982); *Blas Toledo y otros v. Hospital Nuestra Señora de la Guadalupe, supra.* En términos generales, se considera temeraria toda aquella conducta que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o requiera a la otra parte efectuar gestiones innecesarias. El propósito de la imposición de honorarios de abogado en casos de temeridad es *"establecer una penalidad a un litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito. " Blas Toledo y otros v. Hospital Nuestra Señora de la Guadalupe, supra.*

La conciencia de la *"propia sinrazón"* que caracteriza a la parte temeraria no debe afectar a quien en buena lid ejerce o defiende sus derechos. Un postulado fundamental de nuestro sistema de administrar justicia es que *"no puede penalizarse a un litigante que utiliza las vías judiciales para vindicar un derecho por el simple hecho de no haber prevalecido en su acción. Así, la norma imperante en nuestro ordenamiento procesal civil establece que la parte victoriosa siempre tiene derecho a recobrar las costas, pero los honorarios de abogado sólo proceden cuando el tribunal determina que la parte perdidosa actuó con temeridad."* Véase, *González y otros v. Commonwealth Insurance Co.,* 140 D.P.R. 673 (1996).

Finalmente, es norma claramente establecida por el Tribunal Supremo de Puerto Rico que en ausencia de error manifiesto, pasión, prejuicio o parcialidad no se intervendrá a nivel apelativo con las determinaciones de hechos y adjudicación de credibilidad hecha en instancia por el juzgador de los hechos. *Trinidad García v. Chade,* **2001 J.T.S. 10**; *Colón y otros v. K-Mart y otros,* **2001 J.T.S. 98**; *Municipio de Ponce v. Autoridad de Carreteras,* **2001 J.T.S. 3**; *Monllor Arzola v. Soc. Legal de Gananciales,* 138 D.P.R. 600 (1995)

Aunque, de ordinario, el foro apelativo no interviene con la apreciación de la prueba que hacen los foros judiciales de instancia, sí lo hace cuando un balance racional, justiciero y jurídico de la totalidad de la prueba y de los documentos que obran en autos lleva a conclusiones distintas a las del tribunal de instancia. *Negrón Rivera y Bonilla, Ex Parte,* 120 D.P.R. 61 (1987).

Un tribunal apelativo no puede dejar sin efecto una sentencia cuyas conclusiones encuentran apoyo en la

prueba desfilada. *Sánchez Rodríguez v. López Jiménez*, 116 D.P.R. 172, 181 (1985); *Pérez v. Hosp. La Concepción*, 115 D.P.R. 721, 728 (1984). No obstante, está claro que el arbitrio del juzgador de hechos es respetable, mas no absoluto. Por eso, una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de un tribunal apelativo. Véase, *Rivera Pérez v. Cruz Corchado*, 119 D.P.R. 8 (1987).

En el ejercicio de su facultad revisora, el foro apelativo se encuentra en igual posición que el foro de primera instancia en cuanto a evaluar la prueba documental ofrecida. Es por ello que, en lo que respecta a dicha evidencia, está facultado a adoptar su propio criterio en la evaluación de la misma.

Aun reconociendo que cuando se trata de prueba documental estamos en la misma posición que los tribunales de instancia para evaluar la prueba y llegar a nuestras propias conclusiones, no estamos ante un caso que amerite sustituir o descartar el testimonio pericial o documental creído por el TPI. *Ramos Robles v. García Vicario*, 134 D.P.R. 969 (1993).

Pasemos aplicar el derecho precedentemente esbozado a la controversia planteada.

## IV

Contrario a lo estimado por la parte apelante, a saber, que la escritura de compraventa objeto de este litigio sufrió una novación extintiva, dando paso a la existencia de un nuevo contrato entre las partes, estamos sencillamente ante un incumplimiento por parte del apelante de no entregar la cosa determinada a cambio de un precio cierto. Es decir, acorde con los términos y condiciones contenidas en la Escritura Número 60 de Compraventa otorgada entre las partes el 18 de marzo de 1999, una vez la parte apelada pagó ese mismo día el precio cierto de $31,000, era obligación de la parte apelante entregar el predio allí descrito. Esta transacción estaba supeditada a la segregación de dicho predio de la finca principal y la consecuente aprobación de ARPE. La parte apelante se comprometió en presentar ante la agencia concernida la petición de referencia y a darle seguimiento a dicha gestión.

Sin embargo, de los documentos se desprende que en múltiples ocasiones la parte apelada, sin necesidad de ello, se vio obligada a requerirle a la parte apelante la consabida segregación, recibiendo como respuesta que eso era responsabilidad exclusiva de ARPE y no de ellos. Transcurrido un término razonable sin que hubiese resultado alguno, el apelado optó por solicitar la devolución de todos los pagos realizados, según consignados. En respuesta a ello, y conforme el derecho aplicable antes discutido, el 1 de mayo de 2001, las partes se comprometieron a la devolución de las contraprestaciones contenidas en la escritura de compraventa. Conforme sugerido por el apelante, y sin ser legalmente necesario para que se cumpliera con el cometido, las partes vertieron el mencionado acuerdo por escrito.

Al no cumplir con su parte del acuerdo válido original, esto es, la devolución del dinero a los apelados, dicha parte se vio obligada a la compra de otro solar e hipotecarlo para financiar su residencia.

Por tanto, la inobservancia del apelante de los términos contendidos en la escritura válida otorgada entre las partes obligó a la parte apelada a incurrir en una inversión no espectada y a unos daños por pérdida económica debidamente computados por el TPI.

Vale aclarar en este punto que a diferencia de lo estimado por el foro sentenciador, no se desprende del expediente prueba tendente a demostrar inequivocamente que hubo una actuación dolosa por parte del apelante. Sin embargo, recordemos que la revisión judicial se da contra la sentencia y no contra sus fundamentos. *Pérez Vda. Muñiz v. Criado*, 151 D.P.R. 355 (2000); *Pagán v. Alcalde Mun. de Cataño*, 143 D.P.R. 314 (1997). Así, dicha conclusión no es suficiente para dejar sin efecto la disposición que hiciera el TPI de la controversia planteada. Según expresado y discutido, el simple incumplimiento del apelante con lo pactado le brinda el

derecho a la parte apelada no sólo de rescindir el contrato, sino de llevar una acción en daños para ser debidamente indemnizado por la pérdida económica incurrida. Siendo dicha prueba una real y positiva de un daño causado, procede la indemnización por parte del apelante no solamente del precio cierto pagado previamente por la parte apelada, sino de una indemnización en daños por pérdida económica ascendente a $69,000.

Al constituir la Escritura Número 60 de Compraventa un documento válido entre las partes, no nos convence el argumento del apelante que trata de establecer que la misma fue novada por el *"contrato"* firmado entre las partes el 1 de mayo de 2003. A lo sumo, dicho *"contrato"* es una reiteración de los acuerdos esbozados en el pacto original otorgado mediante la referida escritura pública del 18 de marzo de 1999. Por tanto, para propósitos del cómputo de intereses, coincidimos con la apreciación del TPI en fijar los mismos desde la fecha del otorgamiento de la escritura.

De otro modo, examinado el caso para determinar si la imposición de honorarios de abogado estuvo justificada, resolvemos en la afirmativa. Se trata aquí de un caso claro de incumplimiento de contrato, cobro de dinero, la existencia documentada de una deuda y la aceptación inequívoca por parte de la apelante de adeudar ciertas cantidades. El apelante tenía plena conciencia de las múltiples gestiones llevadas a cabo por el apelado para recobrar su acreencia y no respondió a las mismas. Al así actuar, se colocó en la desventajosa posición de ser demandado para cumplir con lo antes acordado. En virtud de ello, obró correctamente el TPI al imponer el pago de honorarios de abogado por temeridad.

## V

Habida cuenta de lo anterior, se confirma la sentencia apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones

### ESCOLIOS 2006 DTA 105

**1.** Identificación alfanumérica KLAN-05-01073, recurso presentado ante nos sobre el mismo cuadro fáctico.

**2.** En consonancia con lo advertido por esta Curia en la nota al calce número 1 de nuestra referida Sentencia de 28 de febrero de 2006, cumplimos una vez más con reiterar que *"[p]or considerar el dictamen [emitido en aquella ocasión por el TPI] una resolución, [acogimos] el recurso como un certiorari aunque conserve la misma identificación alfanumérica asignada por nuestra Secretaría"*.