Avelino González Mena, demandante y apelante, v. Dannermiller Coffee Co., demandada y apelada.

No. 6685.—*Sometido:* Mayo 21, 1935. *Resuelto:* Junio 7, 1935.

*C. del Toro Fernández,* abogado del apelante; *José López Baralt,* abogado de la apelada.

El Juez Asociado Señor Córdova Dávila, emitió la opinión del tribunal.

Bajo el título de rescisión de contrato e indemnización inicia Avelino González Mena un pleito contra la mercantil Dannermiller Coffee Co. en una demanda que a su juicio contiene tres causas de acción: una sobre rescisión de contrato, otra sobre indemnización de daños y perjuicios sufridos de parte del actor en virtud de la ganancia que dejó de percibir entre el precio de la compra y el precio de la venta, y otra por indemnización de daños y perjuicios sufridos porque la demandada por sus actos voluntarios causó injuria y difamación sobre el nombre del demandante en sus relaciones mercantiles, originándole pérdida de clientes y angustia mental que afecta su salud.

La Corte de Distrito de San Juan, resolviendo cuestiones previas planteadas por la parte demandada, declaró

sin lugar la demanda con imposición de costas al demandante. Se alega en la demanda que el demandante, Avelino González Mena, antes del 29 de febrero de 1932, era un comerciante dedicado a la compra y reventa de café, en Puerto Rico, con domicilio en Santurce, y la demandada, una corporación privada que venía dedicándose a especulaciones en la importación y exportación del mismo artículo, con su oficina principal en Nueva York, Estados Unidos de América, haciendo negocios en esta isla a través de sus agentes; que en 29 de febrero 1932 la Dannermiller Coffee Co. celebró un contrato de cuenta corriente con el demandante, a quien concedió un crédito de $1,000 a condición de que cada orden sobre los contratos de compraventa de café que en adelante celebrara fuese satisfecha mediante giro aceptado a veinticinco días vista, debiendo en caso de concurrir tres órdenes diferentes, satisfacer al demandante el primer giro, aceptar entonces el tercero y luego, vencido, el segundo pasaría a ser el primero y así sucesivamente; que en caso de que la mercadería, una vez en Puerto Rico, no fuese levantada por el comprador en un término de quince días, transcurrido este término podría disponer de ella la vendedora, Dannermiller Coffee Co.; que en 24 de marzo de 1932, el demandante celebró un contrato con la demandada a través de su representante en dicha fecha, José C. Quintero Castro, comprándole en relación con el indicado crédito 300 sacos de café tostado de a 100 libras cada uno, a razón de once centavos libra, y el día 11 de abril de 1932, amplió dicho contrato con la demandada a través de su agencia en Puerto Rico, desempeñada entonces por la Nitrate Agencies Co., añadiendo 200 sacos más del mismo café, a igual precio y en idénticas condiciones, y con arreglo al embarque en ambos casos, debiendo atenerse la demandada a las órdenes que a su conveniencia y de tiempo en tiempo le dirigiera el demandante; que en 11 de julio de 1932 el demandante ordenó a la demandada la remisión de un remanente de 51 sacos

de café que fué embarcado y consignado a nombre del demandante en su domicilio de Santurce, San Juan, según el conocimiento, borderó y giro que cubría el valor de la mercancía, estando estos documentos a cargo de The National City Bank of New York, sucursal de San Juan; que dicho café fué embarcado el 24 de agosto en el vapor Borinquen que arribó a San Juan cinco días después; que notificado el demandante por la demandada del embarque de los 51 sacos de café, se personó en las oficinas de The National City Bank of New York, sucursal de San Juan, el 3 de septiembre de 1932, con la intención y propósito que allí reveló de hacer efectivo en el acto el giro contra él vencido, aceptando el otro en curso, y reclamó la entrega de los papeles correspondientes para levantar y llevarse consigo la mercadería expresada; que no pudo realizar su propósito, porque el National City Bank of New York, sucursal de San Juan, hízole saber que el día anterior la Nitrate Agencies Co. había solicitado todos los papeles concernientes al embarque de los 51 sacos de café para vendérselos a Jiménez & Fernández, comerciantes de esta plaza al tipo de doce centavos y cuarto cada libra, según instrucciones recibidas por dicha agencia de la Dannermiller Coffee Co., confirmádasles por cable, en virtud de lo cual el banco entregó a la Nitrate Agencies Co. todos los documentos de que antes se ha hecho mención; que la Nitrate Agencies Co., actuando por instrucciones y a nombre de la Dannermiller Coffee Co. vendió el 3 de septiembre de 1932 los 51 sacos de café del demandante a la mercantil Jiménez & Fernández al precio de doce centavos cada libra, privando así a aquél de cubrir imperiosos compromisos que había contraído con sus clientes en Puerto Rico; y que para dicha fecha el demandante se hallaba dentro del término en que podía levantar su café del muelle de San Juan, sin que tuviera otro giro que pagar que el concerniente a la entrega de la partida de café de que se le privó por la Dannermiller Coffee Co.; que cuando estos hechos ocurrieron, se carecía de café en San Juan y el demandante tenía

vendidos a clientes suyos, al precio de $30 el quintal, los 51 sacos que compró a $11 quintal a la demandada, dejando de percibir una ganacia de $204, deducido el importe de derechos de aduana, y que por la conducta de la Dannermiller Coffee Co. los clientes del demandante le retiraron su confianza y relaciones, causándole pérdida en las ganancias que durante un año devengaría de tales clientes, por una suma no menor de $2,000; que para la fecha del quebrantamiento del contrato la firma comercial del demandante gozaba de buen nombre y fama, y que el proceder de la Dannermiller Coffee Co. instruyendo a la Nitrate Agencies Co. para que recogiera en The National City Bank toda la documentación e impidiendo al demandante que levantara el café que le había sido consignado, mediante instrucciones cablegráficas al National City Bank, y la venta que del artículo se hizo a otra firma mercantil, han causado injuria y difamación sobre el buen nombre del demandante en la comunidad; que la conducta de la demandada fué conocida por la Nitrate Agencies Co. y empleados, por el National City Bank y empleados y por los comerciantes Jiménez & Fernández y empleados, y de muchas otras personas relacionadas con ellos, siendo luego del dominio público e interpretándose como un acto moral expresivo de haberle retirado la Dannermiller Coffee Co. el crédito y la confianza en su propiedad al demandante, lo que produjo a éste sonrojo y angustia mental intensa, que afectó seriamente su salud, comenzando con perturbaciones de su sistema nervioso y produciendo una dolencia hepática que ha necesitado asistencia facultativa.

En el primer motivo se alega que la corte erró al declarar con lugar la excepción previa de falta de hechos contra la tercera causa de acción. Las alegaciones contenidas en la demanda no constituyen tres causas de acción. El demandante basa su reclamación en el incumplimiento de un contrato, dividiendo los daños que alega se le han ocasionado en diferentes partidas, considerando que las ganan-

cias dejadas de percibir y los daños a que cree tener derecho por las angustias mentales constituyen dos diferentes causas de acción. En realidad la acción que se ejercita es una de indemnización de daños y perjuicios por incumplimiento de contrato. Sin embargo, como la parte actora en su señalamiento de errores estima que estas partidas constituyen causas de acción separadas, las consideraremos así para el propósito de esta decisión.

██ La tercera causa de acción a que se refiere el apelante en su primer motivo de error es aquélla en que solicita daños y perjuicios originados por la actuación extraña de la demandada, que se ha reflejado de manera injuriosa y difamatoria sobre el buen nombre del demandante en la comunidad, lo que le ha causado sonrojo y angustia mental intensa que ha afectado seriamente su salud, comenzando con perturbaciones de su sistema nervioso y provocando una dolencia hepática que ha necesitado asistencia facultativa.

La parte apelada alega que el demandante no puede obtener compensación por daños que tienen el carácter de remotos y que no son una consecuencia natural y lógica del alegado incumplimiento del contrato por parte de la demandada. Éste fué el fundamento que tuvo la corte inferior para resolver las excepciones previas y declarar sin lugar la demanda.

La parte apelada cita un número de decisiones de las cortes americanas para sostener su teoría de que los daños alegados son remotos y no previstos por las partes. La regla general es que en una acción basada en incumplimiento de contrato, el demandado es solamente responsable por las consecuencias que se originan directamente de dicho incumplimiento y previstas o podidas prever por los contratantes cuando se llevó a cabo el contrato y que puedan probablemente derivarse de la falta de su cumplimiento. *City of East Grand Forks* v. *Steele,* 45 L.R.A. (N. S.) 205, 121 Minn. 296, 141 N.W. 181.

En el caso de *M. M. Stone & Co.* v. *Postal Telegraph Cable Co.*, 35 R. I. 498, 87 Atl. 319, la Corte se expresó así:

"La regla con respecto a daños especiales por incumplimiento de contrato seguida por los tribunales ingleses y americanos y aprobada por esta corte en Greene v. Creighton, 7 R.I. 1, fué establecida por el Barón Alderson en Hadley v. Baxendale, 9 Exch. 353, de la manera siguiente: 'Cuando dos partes han hecho un contrato que una de ellas ha quebrantado, los daños que la otra parte debe recibir con respecto al incumplimiento del contrato serán aquéllos que puedan considerarse naturalmente derivados, conforme al curso ordinario de las cosas, de la ruptura del contrato mismo, o que pueda razonablemente suponerse que fueron previstos por las partes al tiempo de contraerse la obligación como el resultado probable del incumplimiento. Ahora bien, si las circunstancias especiales bajo las cuales el contrato fué realmente hecho se comunicaron por los demandantes a los demandados y fueron así conocidas de las partes, los daños resultantes del incumplimiento del contrato que dichas partes razonablemente previeran, sería el montante del perjuicio que ordinariamente se derivaría del quebrantamiento del contrato bajo aquellas especiales circunstancias así conocidas y comunicadas. Pero, por el contrario, si estas circunstancias especiales fueron completamente desconocidas por la parte que violó el contrato, puede solamente suponerse que tuvo en mente el montante del perjuicio que se originaría generalmente, en la gran multitud de casos no afectados por circunstancias especiales, de la ruptura de tal contrato'."

Los artículos 1058, 1059 y 1060 del Código Civil que tratan de los daños y perjuicios que surgen del incumplimiento de una obligación, dicen así:

"Art. 1058.—Fuera de los casos expresamente mencionados en la ley, y de los en que así lo declare la obligación, nadie responderá de aquellos sucesos que no hubieran podido preverse, o que previstos, fueran inevitables.

"Art. 1059.—La indemnización de daños y perjuicios comprende, no sólo el valor de la pérdida que haya sufrido, sino también el de la ganancia que haya dejado de obtener el acreedor, salvas las disposiciones contenidas en los artículos siguientes.

"Art. 1060.—Los daños y perjuicios de que responde el deudor de buena fe son los previstos o que se hayan podido prever al tiempo de constituirse la obligación y que sean consecuencia necesaria de su falta de cumplimiento.

"En caso de dolo responderá el deudor de todos los que conocidamente se deriven de la falta de cumplimiento de la obligación."

El artículo 1059, según el cual la indemnización de daños y perjuicios comprende no sólo el valor de la pérdida que se haya sufrido, sino también el de la ganancia que se haya dejado de obtener, aparece condicionado por el artículo 1060, que limita los daños y perjuicios, tratándose del deudor de buena fe, a los previstos o que se hayan podido prever al tiempo de constituirse la obligación y que sean consecuencia necesaria de la falta de cumplimiento de la misma. El último párrafo del artículo 1060 establece una distinción importante, porque de acuerdo con el mismo el deudor doloso no sólo repone de los daños previstos o que se hayan podido prever al tiempo de constituirse la obligación, sino de todos los que conocidamente se deriven de su falta de cumplimiento.

Estos artículos, aplicables a toda clase de obligaciones, han merecido detenida y juiciosa consideración de los comentaristas del derecho civil. Manresa, comentando los artículos 1106 y 1107 del Código Civil Español, equivalentes a los 1059 y 1060 de nuestro Código, dice:

"La evidente generalidad de estos artículos, aplicables a toda clase de obligaciones y en relación con los preceptos especiales de cada uno de éstos, según se ha reconocido, verbigracia, para el arrendamiento (Sentencia del Supremo de 12 de febrero de 1896), y su amplitud de expresión, siquiera se contengan restricciones en el 1,107, hacen y harán que se sean continuamente invocados; pero no logran que dejen de ser restrictivamente interpretados por los Tribunales, cuyo criterio, como ya indicamos al comentar otro artículo, también amplio y concordante con éstos, el 1101, no deja de ser fundado.

"*     *     *     *     *     *     *

"El art. 1107 refleja, en la distinta extensión que, según los casos, atribuye a la indemnización, las diferencias de gravedad que existen entre los orígenes de aquélla, expresados en los artículos precedentes; diferencias que, dado el carácter, si no de *pena*, de *sanción reparatoria* que la indemnización reviste, era natural tener en cuenta.

"Según estos orígenes y este artículo, caben dos hipótesis: el caso del deudor de buena fe y el caso de dolo. En la primera de estas

hipótesis se necesita que concurran en los perjuicios dos circunstancias, y no cualquiera de ellas, sino ambas conjuntamente; que tales perjuicios se pudieran prever al tiempo de constituirse la obligación, no después de constituída, y que sean consecuencia necesaria del incumplimiento de la obligación, no una mera contingencia, ni siquiera incidentalmente enlazados con aquel incumplimiento.

"Es indudable que la prueba de que concurren en los perjuicios tales circunstancias, incumbe al que se cree perjudicado, debiendo practicarla tan suficiente como para demostrar la existencia de aquéllos, puesto que también son tales circunstancias fundamento esencial de la indemnización que reclama.

"Siendo los dos párrafos de este art. 1,107 restrictivos de la amplitud de la indemnización, se diferencian, en armonía con los respectivos supuestos, en que la restricción del primero alcanza a la extensión y a la prueba de aquélla, y la restricción del segundo se refiere no más que al último extremo: Con efecto, por lo que toca al *origen* de la indemnización, no se exige, caso de dolo, que los perjuicios sean *consecuencia necesaria* del incumplimiento, bastando con que de éste se *deriven;* término o concepto muy distinto, que comprende mayor extensión, y aserto, corroborado por el empleo de la palabra *todos,* antepuesta a los perjuicios. En cambio, con relación a la prueba, el empleo del adverbio *conocidamente* supone la exigencia de que aquélla sea suficiente, puesto que el legislador excluye el enlace dudoso entre el daño y la causa que se le atribuye. También es indudable en este aspecto de prueba, que corresponde al reclamante justificar que se está en el segundo de los supuestos de este artículo, y no en el primero, puesto que la buena fe se presume y el dolo no.

"Por lo demás, el Tribunal Supremo, interpretando con algún rigor la doctrina del Código, tiene declarado que de la expresión literal de los artículos 1106 y 1107 'se deduce que las indemnizaciones de daños y perjuicios comprenden, previstos o podidos prever, los que sean consecuencia necesaria de la falta de cumplimiento de las obligaciones en que incurriera el deudor, sin que la ley exija que aquélla sea *directa* sino que basta con que sea necesaria' (sentencia de 20 de abril de 1915)." 8 Manresa 94, 96 y 97.

Apunta Scaevola, copiando a Toullier, que hay dolo siempre que no se ejecute, o que se ejecute tardíamente, una obligación "con deseo de perjudicar al otro contratante", y añade que de esta definición sólo podemos aprovechar el último período, porque el simple hecho de que no se ejecute

una obligación, o el de que se realice fuera de plazo, encaja más en los conceptos, respectivamente, de la morosidad y de la negligencia, que en el del verdadero dolo.

Según el artículo 1055 del Código Civil, la responsabilidad procedente del dolo es exigible en todas las obligaciones. Comentando este artículo, que corresponde al 1,102 del Código español, dice Scaevola:

"El dolo es realmente un concepto del derecho penal trasladado, en ciertos aspectos particulares, al derecho civil, pero que pertenece esencialmente a la esfera del delito, y se constituye, como éste, por lo que llaman los penalistas la *malicia*, o sea la intención de causar un mal a la persona o a la propiedad ajena. En esto se diferencia fundadamente el dolo de la negligencia y de la morosidad, que comparten con él los dominios del cumplimiento irregular de las obligaciones.

"La negligencia y la morosidad producen un perjuicio, no sin faltar un cierto grado de voluntad, de que más adelante trataremos, que forma también como una intención indirecta de producir un mal. Pero esta intención en el dolo es directa, como en el delito, y se confunde filosóficamente con él, porque en su esencia nada los separa. Por eso muchos jurisconsultos eminentes pretenden un día y otro, como cortapisa contra la mala fe, llevar expresamente al Código Penal las acciones dolosas que figuran hoy de una manera exclusiva, acaso sin razón, dentro de la legislación civil.

"El dolo es, en resumen, el deseo de perjudicar a otro, y en tanto en cuanto este deseo se exterioriza en un verdadero perjuicio, entra en el precepto del artículo que comentamos." 19 Scaevola, Comentarios al Código Civil, 495.

En el presente caso hay que descartar el elemento del dolo, que no aparece en las alegaciones de la demanda. No se alega que la conducta de la demandada sea dolosa, y como la buena fe se presume, si no existe alegación en contrario, no cabe asumir que se haya establecido ningún hecho destructivo de esta presunción. Descartado el dolo, los daños a que tiene derecho el demandante son aquéllos previstos o que se hayan podido prever al tiempo de constituirse la obligación y que sean consecuencia necesaria de su falta de cumplimiento. No se alega en la demanda que hubiesen daños previstos y, por lo tanto, debemos atenernos a los que

se pudieron prever cuando se llevó a cabo el contrato. Las angustias mentales sufridas por el demandante no son ciertamente daños que puedan ser indemnizados en esta acción basada en el incumplimiento de un contrato. No lo son en nuestro derecho civil ni en el derecho americano, salvo raras excepciones, en que el incumplimiento del contrato es de tal carácter que autoriza *an action of tort. Young* v. *Western Union Telègraph Co.,* 107 N.C. 370; *Beaulieu* v. *Great Northern Ry. Co.,* 19 L.R.A. (N. S.) 564, 103 Minn. 47. Debe desestimarse el error apuntado.

También en la titulada segunda causa de acción se reclaman ciertos daños que fueron considerados remotos por la corte inferior. Alega el demandante que para la fecha en que el contrato quedó incumplido había vendido a clientes suyos, al precio de $30 el quintal, los 51 sacos de café que compró a $11 quintal, dejando de percibir una ganancia de $204, deducido el importe de derechos de aduana. No hay duda de que los hechos que aquí se alegan constituyen una causa de acción, y así lo reconoce la corte inferior, aunque se declara sin jurisdicción para conocer de la misma. El demandante reclama con precisión y claridad la diferencia entre el precio de venta estipulado en el contrato y el convenido con sus clientes, a lo cual tiene perfecto derecho; pero luego va mucho más allá y alega que con motivo de la conducta de la demandada los clientes del demandante le retiraron su confianza y relaciones, causándole pérdidas en las ganancias que durante un año devengaría de tales clientes, por la cantidad de $2,000. Con estas generalidades, vagas e imprecisas, reclama el demandante beneficios que estima pudo percibir, sin que siquiera nos hable de la existencia de algún convenio para venderle café a sus clientes durante el tiempo mencionado. No sabemos en qué se basa el demandante para reclamar los beneficios que hubiere podido percibir durante un año. Del mismo modo que ha fijado este período de tiempo ha podido ampliarlo o disminuirlo caprichosamente y hasta establecer su reclamación por un tiempo

indefinido. No creemos que estos daños puedan incluirse entre aquéllos que hubieran podido preverse al tiempo de constituirse la obligación y que sean consecuencia necesaria del incumplimiento del contrato.

■ El segundo motivo se basa en que la corte erró al declarar que sólo existe una causa de acción en la primera y segunda que aparecen alegadas en la demanda. Los motivos tercero y cuarto se basan en que la corte erró al declararse sin jurisdicción para conocer de la demanda, fundándose en que las acciones sostenidas constituían una sola, envolviendo una cuantía de $204. Como ya hemos dicho, la acción que se ejercita es una de indemnización de daños y perjuicios por incumplimiento de contrato. En la primera causa de acción el demandante establece la base para su reclamación. En la segunda se fija la cuantía de la indemnización por las ganancias que el demandante dejó de percibir durante un año, al retirarle sus clientes la confianza. La corte inferior resolvió que las llamadas primera y segunda causas de acción sólo constituyen una, y que, eliminada la partida de $2,000 de que ya hemos hablado, la reclamación se reduce a $204, de cuya cuantía no puede tomar jurisdicción. La conclusión del tribunal *a quo* nos parece acertada. Una vez descartados los demás daños alegados en la demanda, la reclamación del demandante se reduce por su cuantía a una suma de la cual no puede tomar jurisdicción la corte de distrito, y por esta razón entendemos que las cuestiones previas planteadas por la demandada fueron resueltas con arreglo a derecho. En el caso de *Núñez* v. *Ruga*, 35 D.P.R. 215, 217, se resolvió por esta corte que cuando en una demanda presentada en la corte de distrito se ejercitan dos causas de acción y una de ellas no procede, la corte carece de jurisdicción para dictar sentencia declarando con lugar la otra si la reclamación a que ésta se contrae no excede de $500.

*Debe confirmarse la sentencia apelada.*