GABRIEL ROSADO, demandante y apelado, *v.* SMALLWOOD BROTHERS, INC., demandada y apelante.

Núm. 8704.—*Sometido:* Junio 16, 1943. *Resuelto:* Noviembre 30, 1943.

*Hugh R. Francis,* abogado de la apelante; *Edelmiro Huertas Zayas y R. Atiles Moréu,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

El 5 de diciembre de 1940 Osvaldo Souffront Echevarría trabajaba como engrasador en el taller de la demandada

apelante en la ciudad de Ponce. Aquel día el jefe del taller le ordenó que llevara a un tal Yumuri cierto camión nuevo que la demandada le había vendido. En cumplimiento de dicha orden, Souffront, quien también era chófer, condujo el camión a la calle Mayor-Cantera, donde debía entregarlo. En dicha calle, de bastante tránsito, había varios vehículos estacionados a uno y otro lado y aproximándose a ellos por su derecha, viajaba el demandante en una bicicleta en la misma dirección que llevaba Souffront. Este último, sin tomar en consideración el tránsito por dicha calle y que en el sitio por donde iba el demandante se hallaba parcialmente obstruída por los vehículos mencionados, trató de pasar por entre éstos a una velocidad de 25 millas por hora, dando lugar así a chocar con el demandante con la parte posterior del camión al tratar de evitar una colisión con los vehículos allí estacionados. El demandante fué lanzado al pavimento, causándosele las lesiones que originaron este pleito de daños y perjuicios. Que el conductor del camión era un empleado de la demandada que actuaba dentro del ámbito de sus ocupaciones y que la negligencia de dicho conductor fué la causa próxima del accidente, son cuestiones fuera de duda que la demandada no controvierte seriamente. Establecida la responsabilidad de la demandada por el acto torticero de su empleado, procederemos a determinar si actuó o no correctamente la corte a quo en la fijación de los daños. Las partidas concedidas fueron las siguientes:

1. Por la pérdida de quince días de trabajo en la base aérea de Losey Field, a razón de $2.80 diarios_____ $42

2. Gastos de médico, medicinas y alimentación especial_____ 100

3. Por la pérdida de su trabajo—daños materiales y mentales 200

4. Por sufrimientos físicos y morales a consecuencia de las lesiones recibidas en su cuerpo_____ 300

Total_____ $642

El demandante probó satisfactoriamente que con anterioridad al accidente había trabajado como carpintero en

la base de Losey Field con un haber de $2.80 diarios. Trató de probar que a los cinco días de haber sufrido el accidente recibió una notificación de la W.P.A. comunicándole que había cesado en su empleo por no asistir al trabajo durante quince días. A ese efecto ofreció en evidencia la supuesta notificación escrita, pero al advertir el abogado de la demandada que la notificación que ofrecía era efectiva el 26 de enero de 1941 y que por lo tanto debía referirse a otra ausencia de quince días durante el mes de enero de 1941, su abogado retiró la evidencia ofrecida, manifestando el demandante, que en ese momento declaraba como testigo, que él tenía varios avisos semejantes; pero a pesar de ello no presentó en evidencia el aviso correspondiente (T. de E. 28–29). En cambio el testigo Ramón Tristani Martínez, jefe de listeros, quien por razón de su cargo tenía que firmar las nóminas, con vista de éstas declaró que de ellas aparecía que el demandante había trabajado ocho horas en la base el 19 de noviembre de 1940 y que desde esa fecha no volvió a trabajar ni trabajó en el período comprendido entre diciembre 4 al 11 de 1940. De manera, pues, que cuando el demandante sufrió el accidente el 5 de diciembre de 1940, asumiendo sin resolverlo que él trabajó el día del accidente, desde el día anterior a éste, es decir, desde el 4 de diciembre de 1940 habían vencido los quince días de ausencia que según él fueron la causa de que se le privase de su trabajo en Losey Field. Pero la corte inferior no concede al demandante compensación por este motivo. Según se desprende de la opinión, condena a la demandada a indemnizar al demandante estos quince días como si el demandante los hubiera dejado de trabajar por culpa de la demandada, lo cual es manifiestamente erróneo, pues el accidente, como hemos visto, ocurrió después de expirados dichos quince días. Esta partida, a nuestro juicio, debe ser eliminada.

(2) La segunda partida de $100 por gastos de médico, medicinas y alimentación especial no fué probada en

su totalidad. El médico declaró que estuvo asistiendo al demandante por espacio de cuatro o seis semanas y que sus honorarios valían $50. Pero en cuanto a medicinas y alimentación especial, ninguna prueba presentó el demandante. Por el contrario, su médico declaró que él sólo le recetó "fomentos, quietud, descanso y algún calmante". Y el demandante se limitó a declarar que para la fecha del accidente tenía economizados $75 y los gastó. Esa evidencia es manifiestamente insuficiente para probar los gastos de medicinas y alimentación especial. Por consiguiente, la segunda partida de daños debe ser reducida a $50, cantidad que representa los honorarios médicos.

(3) Por la tercera partida, que se refiere a la pérdida de trabajo y daños materiales y mentales, la corte concedió $200. Declaró el demandante que estuvo veintiséis días sin poder trabajar, o sea desde el 5 de diciembre al 31 del mismo mes (T. de E. 26). Esos 26 días que dejó de trabajar con motivo del accidente, a razón de $2.80 diarios que ganaba, importan $72.80. Pero los sufrimientos o angustias mentales por haber dejado de trabajar no son recobrables. *Cf. Díaz* v. *Cancel*, 61 D.P.R. 888. Por consiguiente, esta partida, por la que concedió la corte inferior $200, debe ser reducida a $72.80.

(4) Por la cuarta partida concedió la corte $300 por concepto de sufrimientos físicos y morales a consecuencia de las lesiones recibidas. Esta partida de $300 está ampliamente sostenida por la evidencia. El Dr. Lanauze, testigo del demandante, declaró que éste presentaba una serie de contusiones en el pecho y sobre las costillas del lado izquierdo, y erosiones en las piernas desde más arriba de la rodilla hasta casi el tobillo, que eran tan fuertes que temió que pudiera haber la fractura de alguna costilla o de la pierna, y que el demandante estuvo sufriendo por espacio de cuatro o cinco semanas.

No podemos cerrar esta opinión sin consignar nuestra reprobación por la conducta impropia de los abogados

del apelado, Sres. R. Atiles Moréu y E. Huertas Zayas, para con su compañero el Lic. Edgar S. Belaval, quien ostentó la representación de la demandada durante el juicio en la corte *a quo*. El Lic. Belaval, en moción que presentó ante este Tribunal el día 24 de junio último, se queja de que en el alegato que dichos abogados del apelado presentaron ante este tribunal hacen contra él las siguientes imputaciones, tan ofensivas como injustas:

"El testimonio de Ramón Tristani fijó la fecha del cese del trabajo del demandante en la Base Aérea de Losey Field para el día 19 de noviembre de 1940, de un modo acomodaticio, y para acomodarlo a su particular teoría, de que el cese del trabajo fué anterior al accidente. Siendo, según ellos, el último día de trabajo del demandante en la Base el 19 de noviembre de 1940, faltando los 15 días que siguen, se cumplieron los 15 días el 4 de diciembre de 1940, y estaba incurso en la falta el día antes del accidente . . . ocurriendo el accidente el día 5 de diciembre 1940. La trama resalta a la simple vista; la estratagema es claramente visible. Contando del día del accidente para atrás, del día 5 de diciembre 1940, día del accidente, quince días para atrás, resulta ser el 19 de noviembre 1940, día fijado habilidosamente por la demandada, como el último día que el demandante fué a trabajar a la Base. . . Y como la demandada tenía especial empeño e interés en probar que el demandante faltó al trabajo, no quince días después del accidente, sino los 15 días inmediatos al accidente, fijó arbitraria, caprichosamente, y de modo taimado, la fecha del cese del trabajo del demandante en la Base, para el día 19 de noviembre 1940. Se ve, resalta a la simple vista, que es un testimonio hecho a la medida, fabricado *ex profeso*, para tratar de hacer un caso cuando no se tiene ni pizca de razón. . . . Pero no se atrevió a presentar en evidencia los *payrolls*, porque esas nóminas no se pueden alterar a su gusto y antojo. Cosa en extremo rara, es que el demandante faltara a su trabajo, precisamente, exactamente los 15 días inmediatos al accidente. . . Ni que se hubiera puesto de acuerdo para esa exactitud cronométrica. Ni un día más, ni un día menos. Ya dijimos, testimonio hecho a la medida. . ."

El hecho de que las nóminas de las obras de la Base de Losey Field, que no estaban bajo el control de la demandada ni de sus abogados, sino que eran documentos públicos en poder de una agencia gubernativa que ninguna relación te-

nía con la demandada ni con su abogado demostrasen sin lugar a dudas que el demandante no había trabajado durante los quince días inmediatamente anteriores al día del accidente, no tiende a probar en forma o manera alguna que el abogado de la demandada fijase "arbitraria, caprichosamente, y de modo taimado", la fecha en que el demandante cesó de trabajar en la Base. Ese era un dato que aparecía concluyentemente de las nóminas y si el abogado de la demandada no las presentó en evidencia fué seguramente por estimarlo innecesario, toda vez que el testigo bajo cuya custodia se hallaban dichas nóminas, Sr. Tristani, declaró sobre su contenido, con vista de ellas, en presencia de la corte. No debe perderse de vista que nada tiende a destruir más la consideración y el respeto que al público deba merecer una clase profesional que falsas imputaciones de la índole de las que nos ocupan. Parece conveniente llamar la atención de dichos abogados hacia lo prescrito en el artículo 17 de los Cánones de Etica Profesional que rigen la conducta de los abogados de Puerto Rico.

*Procede, por lo expuesto, modificar la sentencia, reduciéndola a $422.80, y las costas, y así modificada, se confirma.*

El Juez Asociado Sr. Snyder no intervino.