EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| José A. Muñiz-Olivari, et al<br><br>Demandantes<br><br>v.<br><br>Stiefel Laboratories, Inc.<br><br>Demandados | Certiorari<br><br>2008 TSPR 152<br><br>175 DPR \_\_\_\_ |

Número del Caso: CT-2007-12


Fecha: 9 de septiembre de 2008


United States District Court:

                    District of Puerto Rico


Juez Ponente:

                    Hon. Jaime Pieras, Jr.



Materia: Certificación Interjurisdiccional



Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José A. Muñiz-Olivari, et al

    Demandantes

        v.

Stiefel Laboratories, Inc.,

    Demandados

CT-2007-12

Certificación
procedente del
Tribunal de
Distrito de los
Estados Unidos
para el Distrito
de Puerto Rico

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 9 de septiembre de 2008

El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico nos formula las siguientes preguntas mediante el mecanismo de certificación interjurisdiccional: si en una acción de incumplimiento contractual en la que no existe una alegación independiente al amparo del artículo 1802 procede la indemnización de sufrimientos y angustias mentales producto del incumplimiento; y si dicha indemnización está disponible a favor de una persona que no fue parte del contrato que da lugar a la

acción de incumplimiento pero que resultó directamente afectada por el mismo.[1]

Examinemos los hechos del caso según éstos surgen de la solicitud de certificación del Tribunal de Distrito y los documentos que la acompañan.

## I.

El señor José A. Muñiz Olivari fue empleado de Stiefel Laboratories, Inc. desde junio de 1991 hasta enero del año 2003 cuando fue despedido debido al cese de operaciones de la compañía en la isla. A raíz de su despido, el señor Muñiz Olivari, su esposa, la señora Anabelle Durán López y la sociedad legal de gananciales compuesta por ambos, presentaron una demanda de incumplimiento de contrato, daños y perjuicios y violación a la Ley número 100 de 30 de junio de 1959, 29 L.P.R.A. secs. 146-151, contra el otrora patrono del señor Muñiz Olivari. Alegaron que, a raíz de los planes de reorganización que llevaría a cabo Stiefel --los cuales incluían el cierre de operaciones en Puerto Rico-- el señor Muñiz Olivari había convenido un contrato verbal con su patrono según el cual, una vez completada la reorganización, se le nombraría supervisor de los representantes médicos de la compañía para el estado de Florida y Puerto Rico.

---

[1] Las preguntas formuladas fueron las siguientes:

1. Whether pain and suffering damages are available to a party to a contract in a civil action for breach of contract which does not involve any separate tort allegations; and
2. Whether pain and suffering damages are available to a non-party to a contract who is directly affected by a breach of contract in a civil action for breach of contract which does not involve any separate tort allegation.

Sostuvieron que, una vez hecha la reorganización, el señor Muñiz Olivari solicitó el cumplimiento con lo acordado o que, en la alternativa, se le nombrara gerente de distrito, posición disponible en el estado de Florida, pero Stiefel se negó a cumplir su obligación.

Luego de varios trámites procesales, que incluyeron la desestimación de la causa de acción al amparo de la Ley 100 y la de daños y perjuicios derivados de la misma, un jurado concluyó que, en efecto, entre las partes había existido un contrato verbal válido y que Stiefel había incumplido con el mismo al negarle al señor Muñiz Olivari la continuación en su empleo. En virtud de su dictamen, el jurado concedió a la parte demandante una indemnización por concepto de ingresos pasados, futuros y otros beneficios dejados de percibir.[2] Siguiendo las instrucciones del tribunal a los efectos de que en nuestro ordenamiento procede la indemnización de los sufrimientos y angustias mentales en acciones de incumplimiento contractual, el jurado también concedió una partida por tal concepto a cada uno de los co-demandantes Muñiz Olivari y Durán López.[3]

En apelación, el Tribunal de Apelaciones de Estados Unidos para el Primer Circuito confirmó el dictamen del Tribunal de Distrito y la concesión de indemnización por concepto de las ganancias pasadas y futuras y los beneficios

---

[2] El dictamen del Tribunal de Distrito especifica el monto de las partidas de la siguiente manera: por concepto de pérdida de ingresos pasados $169,520.00, por concepto de ingresos futuros dejados de percibir, $423,820.00 y por concepto de pérdida de beneficios, $19,740.00.
[3] Dicha partida asciende a $100,000.00 para cada uno de los co-demandantes.

adicionales dejados de percibir. En relación con la indemnización por concepto de sufrimientos y angustias mentales derivados del incumplimiento contractual, el Tribunal de Apelaciones determinó que su procedencia en nuestro ordenamiento es un asunto aún no resuelto.[4] Por tal razón, instruyó al Tribunal de Distrito que certificara el asunto a este foro. En cumplimiento de ello, el Tribunal de Distrito nos formula las preguntas anteriormente citadas.

## II.

En nuestro ordenamiento, el mecanismo de certificación interjurisdiccional está contemplado y regulado por el artículo 3.002(f) de la Ley de la Judicatura de 2003, 4 L.P.R.A. sec. 24s(f). El mismo provee para que los tribunales federales puedan someter para una contestación definitiva de este Tribunal cuestiones dudosas de Derecho puertorriqueño que podrían determinar el resultado de un asunto judicial ante el tribunal solicitante. *Id*. *Véase además*, *Guzmán Vargas v. Calderón*, 164 D.P.R. 220 (2005).

Anteriormente nos hemos expresado en relación con la importancia de este mecanismo y su efectividad en nuestro sistema de justicia. En este sentido, hemos acotado que "consideraciones de eficiencia en la tramitación de los casos, certeza judicial, cortesía ("comity") y deferencia al más alto tribunal estatal, son algunas de las consideraciones que abonan a la utilización del mecanismo de certificación

---

[4] El tribunal dispuso que en caso de que este foro estableciera la procedencia de la indemnización de los daños por concepto de sufrimientos y angustias mentales, se concedería la partida ya designada por el jurado.

por el foro federal". *Santana y otros v. Gobernadora y otros*, res. 17 de junio de 2005, 2005 T.S.P.R. 86, 165 D.P.R. \_\_\_\_. Su utilización permite además, "preservar y respetar la función prístina de las cortes estatales de interpretar y formular el derecho de los estados". *Pan Ame. Corp. v. Data Gen. Corp.*, 112 D.P.R. 780, 785 (1982).

Precisamente, la segunda pregunta formulada en la certificación solicitada nos permite expresarnos sobre un asunto de Derecho puertorriqueño sobre el cual no habíamos abundado anteriormente. Por lo tanto, cumplidos los requisitos que posibilitan el que consideremos el recurso de certificación presentado, estamos en posición de resolver.

**III.**

El Código Civil distingue entre la acción de daños y perjuicios extracontractual establecida en su artículo 1802 y la derivada del incumplimiento contractual. Esta última se establece en el artículo 1054 el cual dispone que "quienes en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier modo contravinieren al tenor de aquéllas" vendrán obligados a indemnizar los daños y perjuicios causados. 31 L.P.R.A. sec. 3018. Mientras que la acción de daños y perjuicios extracontractuales del artículo 1802 protege el deber general de diligencia necesario para la convivencia social, la acción *ex contractu* se basa en el incumplimiento de un deber que surge de un acuerdo de voluntades previo entre las partes. *Soc. de Gananciales v. Vélez & Asoc.*, 145 D.P.R. 508, 521 (1998); *Freire Ayala, et al. v. Vista Rent-To-Own, Inc., et*

*al.*, res. 9 de noviembre de 2006, 2006 T.S.P.R. 162, 169 D.P.R. ___. Por tal razón, el fin de este tipo de acción es que se cumplan las promesas a las que las partes otorgaron su consentimiento. *Soc. de Gananciales*, *supra*. *Véase además*, J.L. Lacruz Berdejo y otros, *Elementos de Derecho Civil II, Derecho de Obligaciones*, 3era ed., Barcelona, Ed. Bosch, 1994, vol. I, §27, en la pág. 212.

A pesar de esta diferenciación entre la acción de daños extracontractual y la *ex contractu*, ambas comparten sus elementos esenciales. Al igual que en la acción extracontractual, en la *ex contractu* la parte promovente debe probar la existencia de los daños alegados y del incumplimiento culposo o doloso de la obligación contractual. Además, debe existir una relación de causa a efecto entre el incumplimiento y los daños sobrevenidos. Artículo 1054 Código Civil, 31 L.P.R.A. sec. 3018. *Véase además*, J. Castán Tobeñas, *Derecho Civil Español Común y Foral*, 16ta ed., Madrid, Ed. Reus S.A., 1992, tomo 3, pág. 272.

En el presente caso, no está en controversia la existencia de un contrato verbal entre el señor Muñiz Olivari y Stiefel. De la misma manera, es un hecho probado que el mismo fue incumplido por la demandada. Nuestra tarea consiste, por lo tanto, en interpretar la extensión del artículo 1054 del Código Civil con el fin de concluir si éste contempla únicamente la indemnización de los daños patrimoniales producto del incumplimiento contractual o si incluye también la de los daños morales.

Nuestro primer pronunciamiento en esta materia lo efectuamos en *González Mena v. Dannermiller Coffee, Co.*, 48 D.P.R. 608 (1935), en el que sostuvimos que en una acción de daños por incumplimiento contractual en la que no existe una alegación de dolo, los daños compensables son aquéllos que se pudieran prever al tiempo de constituirse la obligación y que sean consecuencia necesaria del incumplimiento de la misma. 48 D.P.R. en la pág. 616. Ello, en virtud del artículo 1060 del Código Civil, 31 L.P.R.A. sec. 3024, que establece el alcance de la responsabilidad que por concepto del artículo 1054 se puede imponer al deudor dependiendo de si su incumplimiento es de buena fe o doloso.[5] En esa ocasión resolvimos que, siendo ello así, los sufrimientos y angustias mentales no son daños compensables en una acción por incumplimiento contractual. Esta norma fue reafirmada en casos posteriores en los que, haciendo referencia a *González Mena v. Dannermiller Coffee, Co., supra,* declaramos concluyentemente que "las angustias mentales no son daños a ser indemnizados en una acción basada en el incumplimiento de contrato…". *Díaz v. Palmer*, 62 D.P.R. 111, 114 (1943). *Véanse además*, *Díaz v. Emanuelli, Cancel*, 61 D.P.R. 888 (1943); *Rosado v. Smallwood Brothers, Inc.*, 62 D.P.R. 637 (1943).

---

[5] Establece el artículo 1060:

> Los daños y perjuicios de que responde el deudor de buena fe son los previstos o que se hayan podido prever al tiempo de constituirse la obligación y que sean consecuencia necesaria de su falta de cumplimiento. En caso de dolo responderá el deudor de todos los que conocidamente se deriven de la falta de cumplimiento de la obligación.

Artículo 1060 Código Civil, 31 L.P.R.A. sec. 3024

Sin embargo, en *Camacho v. Iglesia Católica*, 72 D.P.R. 353 (1951), reconocimos por primera vez la procedencia de la compensación de los sufrimientos y angustias mentales en una acción de incumplimiento contractual por entender que, de acuerdo con las circunstancias del caso, los mismos pudieron haber sido previstos por la demandada al momento de obligarse y fueron consecuencia necesaria de su incumplimiento. 72 D.P.R. en la pág. 363. Interpretamos en esa ocasión, que en casos anteriores habíamos negado el remedio debido a que, según sus circunstancias, tales daños "no pudieron preverse al constituirse la obligación, ni eran consecuencia necesaria de [la] falta de cumplimiento". *Id.*

Posteriormente, en *Pereira v. IBEC*, 95 D.P.R. 28 (1967), sostuvimos la procedencia de la indemnización de los sufrimientos y angustias mentales de los demandantes como consecuencia del estado ruinoso de sus viviendas. Concluimos que dichos daños eran previsibles y producto del incumplimiento negligente de la parte demandada con sus obligaciones como constructora. Fundamentamos en parte nuestra determinación en las expresiones de Castán Tobeñas a los efectos de que "admitido el daño moral como susceptible de indemnización en el campo extracontractual, no se ve razón por la que haya de ser excluído del campo de las obligaciones contractuales". *Id.* en la pág. 59.

Por tanto, no cabe duda respecto a que en nuestro ordenamiento procede la compensación de los sufrimientos y angustias mentales en acciones de incumplimiento contractual. Al presente, la norma imperante es a los efectos de que en

una acción por incumplimiento contractual procede la indemnización de los sufrimientos y angustias mentales probados, siempre que éstos se hubieran podido prever al momento de constituirse la obligación y sean consecuencia necesaria de su incumplimiento. *Colón v. Glamorous Nails*, 2006 T.S.P.R. 16, res. 3 de febrero de 2006, 166 D.P.R. ____.

Al aplicar esta norma a partir de *Camacho v. Iglesia Católica*, *supra*, la mayoría de nuestras determinaciones en relación con la procedencia de la compensación de los daños morales en acciones de incumplimiento contractual ha descansado en las circunstancias de cada caso para determinar si, según las mismas, el daño fue probado, si el mismo era previsible al momento de contratar y si se deriva de la falta de cumplimiento. *Véanse por ejemplo*, *Soegard v. Concretera Nacional*, 88 D.P.R. 179 (1963); *Duchense Landrón v. Ruiz Arroyo*, 102 D.P.R. 699 (1974); *De Jesús v. Ponce Housing*, 104 D.P.R. 885 (1976).[6] Por lo tanto, como acertadamente expresa el tratadista Vázquez Bote "no es el tema si tales daños son o no indemnizables, cuestión que nadie duda, sino cuándo son indemnizables…". E. Vázquez Bote, *Tratado Teórico, Práctico y Crítico de Derecho Privado Puertorriqueño*, Puerto Rico, Equity, 1991, vol. V, §6.12, pág. 253.

---

[6] Aunque en *Soc. de Gananciales v. Aut. de Fuentes Fluviales*, 91 D.P.R. 75 (1964), no aplicamos dichos elementos, aun así concluimos que "no es errónea, la sentencia que condena a la recurrente a pagar los [sufrimientos y angustias mentales] sufridos por los demandantes como consecuencia de su morosidad en el cumplimiento de su obligación". *Id*. en la pág. 77.

**IV.**

Nos resta por considerar entonces la segunda pregunta certificada por el Tribunal de Distrito a los efectos de si en una acción de incumplimiento contractual procede la compensación de los daños morales producto del incumplimiento contractual a favor de una persona que no fue parte del contrato pero que fue directamente afectada por el incumplimiento.

La interrogante nos refiere al principio de la relatividad de los contratos establecido en el artículo 1209 del Código Civil y según el cual los contratos sólo surten efecto entre las partes que los otorgan y sus herederos. 31 L.P.R.A. sec. 3374. A base del mismo hemos expresado, citando con aprobación a Díez Picazo, que "la reglamentación que crea [el contrato], con su cortejo de derechos, facultades y obligaciones, no le es aplicable [al tercero], ni en su provecho ni en su daño". *Mun. de Ponce v. Aut. de Carreteras*, 153 D.P.R. 1 (2000). Esto debido a que como regla general un contrato es irrelevante en relación con el tercero, pues simplemente regula las relaciones entre las partes contratantes. *Dennis, Metro Invs. v. City Fed. Savs.*, 121 D.P.R. 197, 211 (1988). Por lo tanto, las acciones *ex contractu* sólo pueden ser ejercitadas por una parte contratante en contra de la otra. *Suárez v. Hernández*, 56 D.P.R. 276 (1940). Ello incluye la reclamación de daños y perjuicios producto del incumplimiento contractual, la cual no procederá cuando entre las partes litigantes no exista una

relación contractual previa. *Pérez Sánchez v. Advisors Mortgage Investors, Inc.*, 130 D.P.R. 530 (1992).

Para efectos de este principio y según se desprende del propio texto del artículo 1209, no es tercero aquél a favor de quien se ha incluido una estipulación en el contrato. En tal caso, dicha persona estaría legitimada para exigir el cumplimiento de la misma. 31 L.P.R.A. sec. 3374. Igualmente, aquellas personas que, en calidad de herederos, exijan la compensación de los daños sufridos por su causante a raíz del incumplimiento contractual, estarán legitimados para instar acciones *ex contractu*. La reclamación de indemnización por sus propios daños, sin embargo, deberá ventilarse al amparo del artículo 1802 pues, en ese caso, serían terceros ajenos a la obligación. J. Gil Rodríguez *en* L. Puig Ferriol y otros, *Manual de Derecho Civil*, 2da ed., Madrid, Marcial Pons, S.A., 1998, vol. II, pág. 279.

Por lo tanto, un tercero extraño a una relación contractual no está legitimado para exigir –al amparo del artículo 1054– el resarcimiento de los daños sufridos a raíz del incumplimiento de la obligación contractual. Ahora bien, nada impide que dicho tercero ajeno a la relación contractual de la que surge la acción de daños y perjuicios reclame la indemnización de sus propios daños al amparo del artículo 1802 del Código Civil.

A la luz de lo anterior, resolvemos que procede la compensación de los sufrimientos y angustias mentales en una acción de incumplimiento contractual sujeto a los parámetros expuestos. Sin embargo, una persona extraña a la relación

contractual de la cual surge la acción por incumplimiento no está legitimada para reclamar el resarcimiento de sus propios daños al amparo de la acción *ex contractu*.

Se dictará sentencia de conformidad.


                                        Anabelle Rodríguez Rodríguez
                                             Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José A. Muñiz-Olivari, et al

    Demandantes

        v.

Stiefel Laboratories, Inc.,

    Demandados

CT-2007-12

Certificación procedente del Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico

SENTENCIA

San Juan, Puerto Rico, a 9 de septiembre de 2008

Por los fundamentos expresados en la Opinión que antecede los cuales se incorporan íntegramente a la presente, resolvemos que procede la compensación de los sufrimientos y angustias mentales en una acción de incumplimiento contractual sujeto a los parámetros expuestos. Sin embargo, una persona extraña a la relación contractual de la cual surge la acción por incumplimiento no está legitimada para reclamar el resarcimiento de sus propios daños al amparo de la acción *ex contractu*.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo