La Juez Asociada Señora Rodríguez Rodríguez
emitió la opinión del Tribunal.
El Tribunal de Distrito de Estados Unidos para el Distrito de Puerto Rico nos formula las preguntas siguientes mediante el mecanismo de certificación interjurisdiccional: Primero, si en una acción de incumplimiento contractual en la que no existe una alegación independiente al amparo del Art. 1802 del Código Civil, 31 L.P.R.A. see. 5141, pro-cede la indemnización por los sufrimientos y las angustias mentales producto del incumplimiento. Segundo, si la indemnización está disponible a favor de una persona que no fue parte del contrato que da lugar a la acción de incumplimiento, pero que resultó directamente afectada por éste.([1])
Examinemos los hechos del caso, según éstos surgen de la solicitud de certificación del Tribunal de Distrito, y los documentos que la acompañan.
*816 I
El Sr. José A. Muñiz Olivari fue empleado de Stiefel Laboratories, Inc. desde junio de 1991 hasta enero de 2003 cuando fue despedido debido al cese de operaciones de la compañía en la isla. A raíz de su despido, el señor Muñiz Olivari, su esposa, la señora Anabelle Durán López y la Sociedad Legal de Gananciales compuesta por ambos, presentaron una demanda de incumplimiento de contrato, daños y peijuicios y violación a la Ley Núm. 100 de 30 de jimio de 1959 (29 L.P.R.A. sees. 146 — 151), contra el otrora patrono del señor Muñiz Olivari. Alegaron que, a raíz de los planes de reorganización que llevaría a cabo Stiefel —los cuales incluían el cierre de operaciones en Puerto Rico— el señor Muñiz Olivari había convenido un contrato verbal con su patrono. Según el cual, una vez completada la reorganización, se le nombraría supervisor de los representantes médicos de la compañía para el estado de Florida y Puerto Rico. Sostuvieron que, una vez hecha la reorganización, el señor Muñiz Olivari solicitó el cumplimiento con lo acordado o que, en la alternativa, se le nombrara gerente de distrito, posición disponible en el estado de Florida, pero Stiefel se negó a cumplir su obligación.
Luego de varios trámites procesales, que incluyeron la desestimación de la causa de acción al amparo de la Ley Núm. 100 y la de daños y peijuicios derivados de ésta, un jurado concluyó que, en efecto, entre las partes había existido un contrato verbal válido y que Stiefel había incumplido con éste al negarle al señor Muñiz Olivari la continuación en su empleo. Según su dictamen, el Jurado concedió a la parte demandante una indemnización por los ingresos pasados, futuros y otros beneficios dejados de percibirá([2]) Siguiendo las instrucciones del tribunal a los efectos de que en nuestro ordenamiento procede la indemnización de los sufri *817 mientos y las angustias mentales en acciones de incumplimiento contractual, el Jurado también concedió una partida por tal concepto a cada uno de los codemandantes Muñiz Olivari y Duran López.([3])
En apelación, el Tribunal de Apelaciones de Estados Uni-dos para el Primer Circuito confirmó el dictamen del Tribunal de Distrito y la concesión de indemnización por las ganancias pasadas y futuras y los beneficios adicionales dejados de percibir. En relación con la indemnización por los sufrimientos y las angustias mentales derivados del incumplimiento contractual, el Tribunal de Apelaciones determinó que su procedencia en nuestro ordenamiento es un asunto aún no resuelto.([4]) Por tal razón, instruyó al Tribunal de Distrito que certificara el asunto a este Foro. En cumplimiento de ello, el Tribunal de Distrito nos formula las preguntas citadas.
II
 En nuestro ordenamiento, el mecanismo de certificación interjurisdiccional está contemplado y regulado por el Art. 3.002(f) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003 (4 L.P.R.A. see. 24s(f)). Este provee para que los tribunales federales puedan someter, para una contestación definitiva de este Tribunal, cuestiones dudosas del Derecho puertorriqueño que podrían determinar el resultado de un asunto judicial ante el tribunal solicitante. Id. Véase, además, Guzmán v. Calderón, 164 D.P.R. 220 (2005).
Anteriormente nos hemos expresado en relación con la importancia de este mecanismo y su efectividad en nuestro sistema de justicia. En este sentido, hemos acotado que “consideraciones de eficiencia en la tramitación de los ca *818 sos, certeza judicial, cortesía (‘comity’) y deferencia al más alto tribunal estatal, son algunas de las consideraciones que abonan a la utilización del mecanismo de certificación por el foro federal”. Santana v. Gobernadora, 165 D.P.R. 28, 43 (2005). Su utilización permite, además, “preservar y respetar la función prístina de las cortes estatales de interpretar y formular el derecho de los estados”. Pan Ame. Corp. v. Data Gen. Corp., 112 D.P.R. 780, 785 (1982).
Precisamente, la segunda pregunta formulada en la certificación solicitada nos permite expresarnos sobre un asunto del Derecho puertorriqueño sobre el cual no habíamos abundado anteriormente. Por lo tanto, cumplidos los requisitos que posibilitan el que consideremos el recurso de certificación presentado, estamos en posición de resolver.
III
El Código Civil distingue entre la acción de daños y perjuicios extracontractual establecida en su Art. 1802 y la derivada del incumplimiento contractual. Esta última se establece en el Art. 1054 del Código Civil, 31 L.P.R.A. see. 3018, el cual dispone que quienes “en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier modo contravinieren al tenor de aquéllas” estarán obligados a indemnizar por los daños y perjuicios causados. Mientras que la acción de daños y perjuicios extracontractuales del Art. 1802, protege el deber general de diligencia necesario para la convivencia social, la acción ex contractu se fundamenta en el incumplimiento de un deber que surge de un acuerdo de voluntades previo entre las partes. Soc. de Gananciales v. Vélez & Asoc., 145 D.P.R. 508, 521 (1998); Freire Ayala v. Vista Rent, 169 D.P.R. 418 (2006). Por tal razón, el fin de este tipo de acción es que se cumplan con las promesas a las que las partes otorgaron su consentimiento. Soc. de Gananciales v. Vélez & Asoc., supra. Véase, además, J.L. Lacruz Berdejo, Elementos de Derecho Civil, 3ra ed., Barcelona, Ed. Bosch, 1994, T. II, Vol. I, See. 27, pág. 212.
*819 A pesar de esta diferenciación entre la acción de daños extracontractual y la ex contractu, ambas comparten sus elementos esenciales. Al igual que en la acción extracontractual, en la ex contractu la parte promovente debe probar la existencia de los daños alegados y del incumplimiento culposo o doloso de la obligación contractual. Además, debe existir urna relación de causa a efecto entre el incumplimiento y los daños sobrevenidos. Art. 1054 Código Civil, 31 L.P.R.A. see. 3018. Véase, además, J. Castán Tobeñas, Derecho Civil español común y foral, 16ta ed., Madrid, Ed. Reus, 1992, T. 3, pág. 272.
En este caso, no está en controversia la existencia de un contrato verbal entre el señor Muñiz Olivari y Stiefel. De la misma manera, es un hecho probado que fue incumplido por la demandada. Nuestra tarea consiste, por lo tanto, en interpretar la extensión del Art. 1054 del Código Civil, supra, con el fin de concluir si éste contempla únicamente la indemnización de los daños patrimoniales producto del incumplimiento contractual o si incluye también la de los daños morales.
Nuestro primer pronunciamiento en esta materia lo efectuamos en González Mena v. Dannermiller Coffee Co., 48 D.P.R. 608, 616 (1935), en el que sostuvimos que en una acción de daños por incumplimiento contractual en la que no existe una alegación de dolo, los daños compensables son aquéllos que se pudieran prever al tiempo de constituirse la obligación y que sean consecuencia necesaria de su incumplimiento. Ello, según el Art. 1060 del Código Civil, 31 L.P.R.A. see. 3024, que establece el alcance de la responsabilidad que se puede imponer mediante el Art. 1054 al deudor, dependiendo de si su incumplimiento es de buena fe o doloso.([5]) En esa ocasión resolvimos que, siendo ello así, los *820 sufrimientos y las angustias mentales no son daños compensables en una acción por incumplimiento contractual. Esta norma fue reafirmada en casos posteriores en los que, haciendo referencia a González Mena v. Dannermiller Coffee, Co., supra, declaramos concluyentemente que “las angustias mentales no son daños a ser indemnizados en una acción basada en el incumplimiento de contrato”. Díaz v. Palmer, 62 D.P.R. 111, 114 (1943). Véanse, además: Díaz v. Cancel, 61 D.P.R. 888 (1943); Rosado v. Smallwood Brods., 62 D.P.R. 637 (1943).
Sin embargo, en Camacho v. Iglesia Católica, 72 D.P.R. 353, 363 (1951), reconocimos por primera vez la procedencia de la compensación de los sufrimientos y las angustias mentales en una acción de incumplimiento contractual por entender que, según las circunstancias del caso, éstos pudieron haber sido previstos por la demandada al momento de obligarse y fueron consecuencia necesaria de su incumplimiento. Interpretamos en esa ocasión, que en casos anteriores habíamos negado el remedio debido a que, según sus circunstancias, tales daños “no pudieron preverse al constituirse la obligación, ni eran consecuencia necesaria de [la] falta de cumplimiento”. íd.
Posteriormente, en Pereira v. I.B.E.C., 95 D.P.R. 28 (1967), sostuvimos la procedencia de la indemnización de los sufrimientos y las angustias mentales de los demandantes como consecuencia del estado ruinoso de sus viviendas. Concluimos que estos daños eran previsibles y producto del incumplimiento negligente de la parte demandada con sus obligaciones como constructora. Fundamentamos en parte nuestra determinación en las expresiones de Castán Tobeñas a los efectos de que “admitido el daño moral como susceptible de indemnización en el campo extracontractual, no se ve razón por la que haya de ser exclu[i]do del campo de las obligaciones contractuales”. Id., pág. 59.
Por lo tanto, no cabe duda respecto a que en nuestro ordenamiento procede la compensación de los sufrimientos y las angustias mentales en acciones de incumpli *821 miento contractual. Al presente, la norma imperante es a los efectos de que en una acción por incumplimiento contractual procede la indemnización de los sufrimientos y las angustias mentales probados, siempre que éstos se hubieran podido prever al momento de constituirse la obligación y sean consecuencia necesaria de su incumplimiento. Colón v. Glamorous Nails, 167 D.P.R. 33 (2006).
Al aplicar esta norma a partir de Camacho v. Iglesia Católica, supra, la mayoría de nuestras determinaciones en relación con la procedencia de la compensación de los daños morales en acciones de incumplimiento contractual ha descansado en las circunstancias de cada caso para determinar si, según éstas, el daño fue probado, si era previsible al momento de contratar y si se deriva de la falta de cumplimiento. Véanse, por ejemplo: De Jesús v. Ponce Corp., 104 D.P.R. 885 (1976); Duchesne Landrón v. Ruiz Arroyo, 102 D.P.R. 699 (1974); Soegard v. Concretera Nacional, Inc., 88 D.P.R. 179 (1963).([6]) Por lo tanto, como acertadamente expresa el tratadista Vázquez Bote, “no es el tema si tales daños son o no indemnizables, cuestión que nadie duda, sino cuándo son indemnizables”. E. Vázquez Bote, Tratado teórico, práctico y crítico de derecho privado puertorriqueño, San Juan, Ed. Equity, 1991, Vol. V, See. 6.12, pág. 253.
IV
Nos resta considerar la segunda pregunta certificada por el Tribunal de Distrito a los efectos de si en una acción de incumplimiento contractual procede la compensación por los daños morales producto del incumplimiento contractual a favor de una persona que no fiie parte del contrato, pero que fue directamente afectada por el incumplimiento.
*822 La interrogante nos refiere al principio de la relatividad de los contratos establecido en el Art. 1209 del Código Civil, 31 L.P.R.A. see. 3374, y según el cual los contratos sólo surten efecto entre las partes que los otorgan y sus herederos. Por esto hemos expresado, citando con aprobación a Diez-Picazo, que “la reglamentación que crea [el contrato], con su cortejo de derechos, facultades y obligaciones, no le es aplicable [al tercero], ni en su provecho ni en su daño”. (Corchetes en el original.) Mun. de Ponce v. A.C. et al., 153 D.P.R. 1, 17 (2000). Esto debido a que, como regla general, un contrato es irrelevante en relación con el tercero, pues simplemente regula las relaciones entre las partes contratantes. Dennis, Metro Invs. v. City Fed. Savs., 121 D.P.R. 197, 211 (1988). Por lo tanto, las acciones ex contractu sólo pueden ser ejercitadas por una parte contratante en contra de la otra. Suárez v. Hernández, 56 D.P.R. 276 (1940). Ello incluye la reclamación de daños y peijuicios producto del incumplimiento contractual, la cual no procederá cuando entre las partes litigantes no exista una relación contractual previa. Pérez v. Advisors Mortgage Investors, 130 D.P.R. 530 (1992).
Para efectos de este principio y según se desprende del propio texto del Art. 1209, no es tercero aquel a favor de quien se ha incluido una estipulación en el contrato. En tal caso, dicha persona estaría legitimada para exigir su cumplimiento. 31 L.P.R.A. see. 3374. Igualmente, aquellas personas que, en calidad de herederos, exijan la compensación de los daños sufridos por su causante a raíz del incumplimiento contractual, estarán legitimados para instar acciones ex contractu. La reclamación de indemnización por sus propios daños, sin embargo, deberá ventilarse al amparo del Art. 1802, supra, pues, en ese caso, serían terceros ajenos a la obligación. J. Gil Rodríguez en L. Puig Ferriol y otros, Manual de Derecho Civil, 2da ed., Madrid, Ed. Marcial Pons, 1998, Vol. II, pág. 279.
Por lo tanto, un tercero extraño a una relación contractual no está legitimado para exigir —al amparo del *823 Art. 1054— el resarcimiento de los daños sufridos a raíz del incumplimiento de la obligación contractual. Ahora bien, nada impide que dicho tercero ajeno a la relación contractual de la que surge la acción de daños y perjuicios reclame la indemnización de sus propios daños al amparo del Art. 1802 del Código Civil.
Ala luz de lo anterior, resolvemos que procede la compensación por los sufrimientos y las angustias mentales en una acción de incumplimiento contractual sujeto a los parámetros expuestos. Sin embargo, una persona extraña a la relación contractual de la cual surge la acción por incumplimiento no está legitimada para reclamar el resarcimiento de sus propios daños al amparo de la acción ex contractu.

Se dictará sentencia de conformidad.

(1) Las preguntas formuladas fueron las siguientes:
“1. Whether pain and suffering damages are available to a party to a contract in a civil action for breach of contract which does not involve any separate tort allegations; and
“2. Whether pain and suffering damages are available to a non-party to a contract who is directly affected by a breach of contract in a civil action for breach of contract which does not involve any separate tort allegation.” Certification of Questions to the Supreme Court of Puerto Rico, pág. 5.

(2) El dictamen del Tribunal de Distrito especifica el monto de las partidas de la manera siguiente: por la pérdida de ingresos pasados $169,520, por los ingresos futuros dejados de percibir, $423,820 y por la pérdida de beneficios, $19,740.

(3) Dicha partida asciende a $100,000 para cada uno de los codemandantes.

(4) El tribunal dispuso que en caso de que este foro estableciera la procedencia de la indemnización de los daños por los sufrimientos y las angustias mentales, se concedería la partida ya designada por el Jurado.

(5) Establece el Art. 1060 del Código Civil, 31 L.P.R.A. see. 3024:
“Los daños y peijuicios de que responde el deudor de buena fe son los previstos o que se hayan podido prever al tiempo de constituirse la obligación y que sean consecuencia necesaria de su falta de cumplimiento.
“En caso de dolo responderá el deudor de todos los que conocidamente se deriven de la falta de cumplimiento de la obligación.”

(6) Aunque en Sociedad de Gananciales v. Fuentes Fluviales, 91 D.P.R. 75, 77 (1964), no aplicamos dichos elementos, aún así concluimos que “no es errónea, la sentencia que condena a la recurrente a pagar los [sufrimientos y angustias mentales] sufridos por los demandantes como consecuencia de su morosidad en el cumplimiento de su obligación”.